IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CR-90 |
| | ) | |
| JOYCE E. ALLEN, and | ) | (VARLAN / GUYTON) |
| SHARON KAY THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on October 23, 2012, for a motion hearing on the Defendants'[1] motions to dismiss the Indictment: (1) Motion to Dismiss Indictment [Doc. 16], (2) Motion to Dismiss Count 7 [Doc. 18], and (3) Motion to Dismiss Count 7 in Part Due to Failure to Establish an Offense [Doc. 20], all filed on August 27, 2012. Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government. Attorneys Ralph E. Harwell and Jonathan Patrick Harwell represented Defendant Allen. Attorney John E. Eldridge appeared on behalf of Defendant Thomas. Both Defendants were also present. The Court heard the arguments of the parties and permitted them to file supplemental briefs on the limited issue of whether the Court could consider Benchmark Capital's course of conduct regarding applications for investments in determining whether the applications constitute a security. Defendant Thomas filed a

---

[1] These motions were filed by Defendant Allen and adopted [Docs. 23 and 37] by Defendant Thomas.

1

supplemental brief [Doc. 38] on October 25, 2012, and Defendant Allen filed a supplemental brief [Doc. 39] on October 29, 2012. The Court took the motions under advisement on the following day.

## I. POSITIONS OF THE PARTIES

The Superseding Indictment [Doc. 35][2] charges the Defendants with six counts of uttering fraudulent securities on January 10, 16, 17, 26, and February 7 and 17, 2012. The Indictment states that the Defendants worked at J. Allen and Associates, a business that provided tax planning and preparation services. [Doc. 35, ¶¶ 1, 2, & 4] The Indictment alleges that J. Allen and Associates made money by inducing individuals to buy "annuity investments" from Benchmark Capital, a business which the Defendants knew did not provide legitimate investments. [Doc. 35, ¶3, 4, & 5] Each of Counts One through Six states that Defendant Allen "did knowingly utter counterfeit securities, to wit, investment contracts with BENCHMARK, with the intent to deceive the individuals . . . who purchased such counterfeit securities[.]" [Doc. 35, ¶8] Count Seven of the Superseding Indictment alleges that the Defendants engaged in a conspiracy to launder the proceeds of these illegal activities from February 16 through March 9, 2012.

The Defendants claim that the Superseding Indictment fails to state the alleged offenses because (1) all counts fail to allege that the Defendants uttered a security as defined by statute, (2) Count Seven fails to allege the intent element, and (3) Count Seven fails to allege facts that establish intent to launder criminal proceeds by concealment. The Government responds [Doc. 34] that the Superseding Indictment sufficiently sets out the elements of the crimes and states the

---

[2]The Defendants' motions were filed before the entry of the Superseding Indictment. The Court will examine the differences between the two indictments in its analysis, when these differences are relevant to the motions.

factual allegations such that the Defendants are put on notice of their offenses, may raise a double jeopardy bar in a future prosecution, and are able to prepare for trial. Specifically, it maintains that Counts One through Six properly allege securities because the investment applications, signed by Defendant Allen and returned to the investors in exchange for payment, constitute "investment contracts." It also contends that Count Seven of the Superseding Indictment alleges that the purpose of the alleged transactions was to conceal criminal proceeds. Finally, the Government argues that whether the alleged transactions were actually conducted to conceal criminal proceeds is a matter not subject to pretrial determination.

## II. ANALYSIS

The Defendants challenge the legal sufficiency of the Superseding Indictment, arguing that it does not sufficiently state the elements and facts to put them on notice of the crimes alleged. Specifically, the Defendants argue that (1) all counts fail to allege the Defendants uttered a security, (2) Count Seven fails to allege that they acted with the intent to conceal criminal proceeds, and (3) Count Seven also fails to allege facts that establish intent to launder criminal proceeds by concealment. The Court will address each of these arguments in turn.

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. The Court begins by observing that "a trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment. Russell v. United States, 369 U.S. 749, 760-61 (1962). Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the

Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense. Hamling v. United States, 418 U.S. 87, 177 (1974); Russell, 369 U.S. at 761. Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI; Russell, 369 U.S. at 761.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S. at 117; United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079. The Court examines the sufficiency of the instant Superseding Indictment in the context of these fundamental rights and requirements.

### A. Does the Superseding Indictment Properly Allege a Security?

The Defendants argue that all of the charges depend on the legal allegation that

4

Defendant Allen uttered a counterfeit security but the Superseding Indictment fails to allege facts to show that securities, as contemplated by the statute, were involved. The Indictment alleges that

> On each of the dates set forth in Counts One through Six below, in the Eastern District of Tennessee and elsewhere, ALLEN did knowingly utter counterfeit securities, to wit, investment contracts with BENCHMARK, with the intent to deceive individuals, as identified below, who purchased such counterfeited securities, in violation of Title 18, United States Code, Section 513(a)[.]

[Doc. 35, ¶8] In each of Counts One, Three, Five, and Six, an investor or investors, who are identified by their initials, are alleged to have given one of the Defendants a check payable to Benchmark for varying amounts, and Defendant Allen is alleged to have told the investor(s) that he or she had "purchased an annuity investment" with Benchmark and to have given the investor(s) "an investment application," which "ALLEN had signed on behalf of BENCHMARK." [Doc. 35, ¶¶9, 11, 13, & 14] Count Two alleges that an investor gave Defendant Thomas a check payable to BENCHMARK and that Defendant Allen told the investor that the funds given were put into "an annuity investment with BENCHMARK." [Doc. 35, ¶10] Count Four charges that a husband and wife executed a mortgage on their residence for the purchase of an annuity investment with the proceeds of the mortgage going to Benchmark. [Doc. 35, ¶12] At the closing, which was held at the office of J. Allen and Associates, Defendant Allen told the couple "that they were purchasing an insurance annuity investment with BENCHMARK, which would make their mortgage payments, pay the taxes and insurance, and afford the mortgagors a monthly interest payment. [Doc. 35, ¶12] Defendant Allen also gave the couple "a BENCHMARK application . . . and a BENCHMARK home equity agreement, both of which documents were signed by Allen on behalf of BENCHMARK." [Doc. 35, ¶12]

5

The Defendants argue that none of these allegations involve the utterance of a "security," which they contend is "a document that evidences (and thus secures) a legal obligation or legal ownership." [Doc. 17, p.6] They maintain that the alleged acts of telling the investors that they had purchased an annuity is not a violation of section 513(a) because no document is involved. They also argue that the copy of the application that Defendant Allen is alleged to have given the investors cannot constitute a security because an application is a request for an investment, not a document that reflects the investment and binds the parties to it. Thus, they contend that accepting the allegations in the Superseding Indictment as true, Counts One through Six fail to state the alleged offense of uttering counterfeit securities and must be dismissed. They argue that Count Seven must also fail because it is based upon Counts One through Six.

The Government responds that Counts One through Six properly allege the utterance of counterfeit securities, i.e. investment contracts. Section 513(a)(3) includes among the types of items that constitute a security an "investment contract." Counts One and Three through Six state that the investors gave funds to the Defendants and that Defendant Allen told them they had purchased a Benchmark annuity and provided a copy of their application which she had signed as an agent of Benchmark. The Government contends that the offer of funds by the investor and the acceptance of the funds by the Defendants, along with the return of the signed application and the representation to the investor that the investor had purchased a Benchmark annuity constitutes an "investment contract." With regard to Count Two, the Government maintains that it expressly involves the same investor as Count One and that this investor is alleged to have given an additional payment, which Defendant Allen stated was also purchasing a Benchmark annuity investment. Accordingly, the Government asserts that the "written instrument pertaining to the investment had

6

been issued by Allen six days earlier, as charged in Count One." [Doc. 34, p. 3]

Section 513(a) provides that "[w]hoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both." 18 U.S.C. §513(a). The statute defines "security" as

> (A) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916(c) of the Electronic Fund Transfer Act, money order, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property;
>
> (B) an instrument evidencing ownership of goods, wares, or merchandise;
>
> (C) any other written instrument commonly known as a security;
>
> (D) a certificate of interest in, certificate of participation in, certificate for, receipt for, or warrant or option or other right to subscribe to or purchase, any of the foregoing; or
>
> (E) a blank form of any of the foregoing[.]

18 U.S.C. §513(c)(3).

The Court finds there is a dearth of case law regarding what constitutes an "investment contract" under §513(a) or addressing the issue of whether a security must be a document, as the Defendants insist. "It is a cardinal rule of statutory construction that, '[i]n the

7

absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning.'" United States v. Wade, 266 F.3d 574, 579 (6th Cir. 2001) (quoting Walters v. Metropolitan Educ. Enter., Inc., 519 U.S. 202, 207 (1997) (internal quotation omitted)). Moreover, the words of a statute must be read in the context of the statute. Brown v. Gardner, 513 U.S. 115, 118 (1984).

The Defendants contend that the common-sense meaning of "security" "is a document that evidences (and thus secures) a legal obligation or legal ownership." However, the word "security" is defined, and thereby given a particular, legal meaning in the statute. See F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994) (holding that "[i]n the *absence* of [a statutory] definition, we construe a statutory term in accordance with its ordinary or natural meaning") (emphasis added). While the various types of securities listed in the statutory definition are documents, not all of them purport to memorialize the legal obligations of the parties. The definition of security includes not only numerous documents that would evidence a security but also extends to "a right to subscribe to or purchase, any of the foregoing," 18 U.S.C. §513(c)(3)(D), and "a blank form of any of the foregoing," 18 U.S.C. §513(c)(3)(E). The Court finds that if a blank form of an investment contract or a right to purchase an investment contract can constitute a security under the statutory definition, then an application in combination with the seller's representation that the buyer has purchased an annuity also qualifies as a security under the statutory definition.[3]

Both the Government in its response and Defendant Thomas in her supplemental brief

---

[3] The Court also observes that Count Four states Defendant Allen gave the investors a signed "BENCHMARK home equity agreement" in addition to a signed application. The Court finds that this home equity agreement would be a security because it is "evidence of indebtedness" or a "written instrument commonly known as a security[.]" 18 U.S.C. §513(c)(3)(A) & (C).

8

[Doc. 38] offer for the Court's consideration evidence beyond that alleged in the Superseding Indictment. The Government provides one of the signed applications as an exhibit to its response [Doc. 34, Exh. 1]. Defendant Thomas provides copies of letters from Benchmark Capital to two investors, who are involved in two of the counts of the Superseding Indictment, stating that Benchmark had received their applications, was processing their accounts, and would issue them an annuity certificate once their account was "complete[.]" [Doc. 38, Exh. 2 & 3] Defendant Allen argues [Doc. 39] that extrinsic evidence cannot be considered to save an insufficient indictment but that undisputed evidence can be used to show that even a facially sufficient indictment should be dismissed for failing to state an offense as a matter of law. Defendant Allen argues that even if the Court were to find the instant Superseding Indictment to be facially sufficient, then the letters provided by Defendant Thomas show that the application was not the final, binding agreement between the Defendants and the investors.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Specifically, a defect in the indictment, such as its failure to state an offense, can be challenged before trial. Fed. R. Crim. P. 12(b)(3)(B). Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id. at 665. In Jones, the appellate court held that the district

9

court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" Id.

Similarly, in United States v. Levin, the Court of Appeals for the Sixth Circuit determined that "the district court concluded from undisputed extrinsic evidence that a Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the intent required to convict the appellees of the controversial counts of the indictment which were dismissed with prejudice." 973 F.2d 463, 470 (6th Cir. 1992). The court held this disposition of the case upon a pretrial motion was appropriate because the motion raised "a legal issue, namely the ability of the government to prove intent which was an integral element of [the statute charged] . . . after the trial court had considered undisputed extrinsic evidence." Id.

From these cases and Rule 12(b), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. Levin, 973 F.2d at 470; Jones, 542 F.2d at 665. The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which

10

> the trial jury can find every element of the offense proven beyond a
> reasonable doubt, or the defendant is entitled to a judgment of
> acquittal. However, the prosecution's evidence is tested at trial, not
> in a preliminary proceeding.

<u>United States v. Short</u>, 671 F.2d 178, 183 (1982); <u>see also</u> <u>Levin</u>, 973 F.2d at 472 (Martin, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

In the instant case, the Court finds that the representations made to the investors by the Defendants and whether the investors understood at the time they received their applications from Defendant Allen that they had actually purchased an annuity are matters of fact to be determined by the jury. Although the applications themselves and other documents, such as the proffered letters from Benchmark Capital, may not be disputed with regard to their authenticity, the investors' understanding of the transaction at the time they tendered their funds and received their applications appears to be a matter in dispute. At the October 23 hearing, the Government argued that Defendant Allen told the investors that they would begin earning money right away. Although counsel for Defendant Thomas argued that Benchmark Capital's course of conduct showed that the applications were not a final binding agreement, the Government argued that additional fraud on the part of Benchmark did not alter the fact that the Defendants uttered counterfeit securities. Accordingly, the Court finds that the import of the signed applications is a disputed factual matter. Thus, the Court cannot consider facts or documents outside of the language of the Superseding Indictment in determining whether it properly alleges that the Defendants uttered counterfeit securities.

The Court finds that an application along with the tender of funds by an investor and the representation by the agent that the investor has purchased an annuity can constitute an investment contract as a matter of law. Whether the instant applications were actually investment contracts in light of the surrounding facts and circumstances, including Benchmark Capital's course of conducting business, is up to the trier of fact. The Court recommends that the Defendants' Motion to Dismiss [**Doc. 16**] be **DENIED**.

### B. Does the Money Laundering Charge Allege an Intent Element?

The Defendants contend [Docs.18 & 19] that Count Seven fails to state the offense of money laundering because it does not allege that they acted with the requisite intent required by the statute. Instead, they argue that Count Seven alleges only that they conspired to conduct financial transactions, which involved the proceeds of uttering counterfeit securities and affected interstate commerce. On September 18, 2012, prior to the motion hearing but after the Defendants filed their motion, the Government brought a Superseding Indictment, which added that the Defendants conspired to conduct a financial transaction affecting interstate commerce, which involved the proceeds of uttering counterfeit securities,

> knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity[.]

[Doc. 35, ¶7(a)] At the October 23 hearing, defense counsel agreed that their motion to dismiss Count Seven for failure to allege the element of intent was now moot. The Court recommends that

12

the Defendant's Motion to Dismiss Count 7 [**Doc. 18**] be **DENIED as moot**.

### C. Does Count Seven State Sufficient Facts to Allege Money Laundering?

Finally, the Defendants challenge [Docs. 20 and 21] Count Seven of the Superseding Indictment, arguing that it fails to allege sufficient facts to establish the offense of money laundering. They contend that Count Seven alleges that they attempted to distribute proceeds but does not allege that the cashier's checks or the replacement check served to conceal proceeds. In other words, they maintain that the Indictment states no facts to show that they intended to launder by concealment. As a result, the Defendants argue that the part of Count Seven that alleges a violation of 18 U.S.C. §1956(a) must be dismissed. The Government responds [Doc. 34] that the Defendants raise a matter that cannot be determined before trial. It argues that it is up to the jury to determine whether the transactions alleged in the Indictment were conducted to conceal the nature and the source of the illegally obtained proceeds.

Count Seven states that from February 16, 2012, to March 9, 2012, the Defendants conspired to conduct financial transactions involving the proceeds of uttering counterfeit securities, knowing that the transactions were designed to conceal the nature of the proceeds and that the proceeds were from unlawful activity. [Doc. 35, ¶16(a)] Count Seven alleges that the Defendants used the following manner and means to conduct the alleged money laundering: On February 16, 2012, Defendant Thomas, at Defendant Allen's request, opened a bank account in the name of "Benchmark–Joyce E. Allen" and deposited therein funds from investors made payable to Benchmark and given "in exchange for counterfeit BENCHMARK annuity investment contracts." [Doc. 35, ¶17(a)] Defendant Thomas deposited additional funds from investors, given for the same

13

purpose, into this account on February 17, 21, 23, and March 2. [Doc. 35, ¶17(b)-(e)] On March 2, after learning of the death of Benchmark's owner Charles Candler, Defendant Thomas withdrew over $900,000 from the account in nine cashier's checks payable to the Defendants and others, including the Defendants' relatives. [Doc. 35, ¶17(f)] Federal investigators seized these cashier's checks from the Defendants later that same evening. [Doc. 35, ¶17(f)] On March 9, 2012, Defendant Allen issued a personal check from the account in the amount of $630,000 payable to an attorney's trust account. [Doc. 35, ¶17(g)] The memo line of this personal check stated "Replacement Investment Funds" for those individuals to whom the cashier's checks had been made payable. [Doc. 35, ¶17(g)]

The Defendants argue that even accepting the facts alleged in Count Seven as true, they do not establish a violation of §1956(a)(1)(B)(i), which proscribes "concealment money laundering." They contend that "[t]here was nothing about the transactions–even accepting the Government's theory of the case, which is that Allen had guilty knowledge of the fraudulent nature of Benchmark–that served to conceal or disguise anything about the proceeds." [Doc. 21, pp.5-6] They assert that Count Seven alleges an attempted distribution of the proceeds but not a concealment, because it fails to allege anything that would have served to legitimate the money by concealing its source.

"A violation of § 1956(a)(1)(B)(i), . . . consists of the following three elements: '(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct[ing] or attempt[ing] to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the . . . source, ownership or control of the proceeds.'" United States v. Marshall, 248 F.3d 525, 538 (6th Cir. 2001) (quoting United

14

States v. Prince, 214 F.3d 740, 747 (6th Cir. 2000)). The third of these elements is the point of controversy in the instant motion. In Marshall, the Court of Appeals for the Sixth Circuit clarified the type of conduct that would constitute concealment money laundering. First, the court observed that the purchase of an item using illegal proceeds, alone, does not constitute money laundering. Id. The court stated that "'[t]he 'most obvious type' of evidence that would support a finding of intent to disguise the proceeds of unlawful activity is 'that of employing a third party in order to conceal the defendant's identity from others.'" Id. at 539 (quoting United States v. Lovett, 964 F.2d 1029, 1034 n.3 (10th Cir. 1992)). If the defendant him or herself engages in the financial transaction, rather that going through a third party, then other evidence must be present to support the concealment element. Id. Our appellate court embraced the following list of the types of evidence that would indicate the intent to conceal the financial transaction:

> "[A] variety of types of evidence have been cited by this and other circuits as supportive of evidence of intent to disguise or conceal. They include, among others, statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals."

Id. (quoting United States v. Garcia-Emanuel, 14 F.3d 1469, 1475-76 (10th Cir. 1994)). The court held evidence that Defendant Marshall purchased a Rolex watch, a diamond bracelet, and expensive wine with funds he stole from an ATM was not sufficient to constitute concealment money laundering under §1956(a)(1)(B)(i). Id. at 539-41 (opining that "a few isolated purchases of wearable or consumable items directly by the wrongdoer is not the type of money-laundering transaction that Congress had in mind when it enacted §1956(a)(1)(B)(i), especially where the value

15

of the items is relatively small in relation to the amount stolen by the defendant").

The appellate court revisited the issue of what evidence is sufficient to show an intent to conceal in United States v. Johnson, 26 F. App'x 441 (6th Cir. 2001). In this case, Defendant Johnson, a bank manager, set up a bank account for a third party, Hudson, into which funds, which Johnson knew to be the illegal drug proceeds of one Bryant, were deposited. Id. at 443. Johnson then authorized the withdrawal of a cashier's check for $110,000 from Hudson's account, payable to Bryant. Id. Less than one hour later, Johnson authorized a second cashier's check for $110,000 from Bryant's account, again payable to Bryant. Id. at 444. Johnson argued that the evidence was insufficient to show that he intended to conceal illegal proceeds because all of these transactions were legal and were a part of his routine duties as a bank employee. Id. at 444, 446. After quoting the above list from Marshall and Garcia-Emanuel, the court found

> that [Johnson's] conduct adequately supported the jury's determination that he possessed both the intent to conceal the source of the cash and the intent to avoid filing a CTR as required by the applicable federal law. There was testimony that the Defendant lied about attending a meeting at which the other co-conspirators were present. Furthermore, there is evidence that shortly after the meeting, the Defendant authorized the opening of an account for Hudson in an attempt to use a third party to conceal the real owner of the funds at issue. There was testimony that the structure of the financial transaction–whereby two cashier's checks were issued in quick succession in the same amount to the same person–was unusual. The record also establishes that the Defendant caused to be filed a CTR containing material misstatements and omissions. Thus, by arranging for the transactions as described, the Defendant was able to move the $110,0[0]0 through a nominee account and back out in the form of a cashier's check made payable to Bryant while concealing the fact that Bryant was the source and the owner of the cash. To further insulate the transaction from detection or examination by law enforcement, the Defendant arranged for [the bank] to file a CTR containing incorrect information.

16

Id. at 446-47.

In the instant case, Count Seven of the Superseding Indictment expressly incorporates the following allegations from paragraph 6:

> On or about February 16, 2012, CANDLER delivered to ALLEN approximately $1.3 million in checks payable to Benchmark, representing such checks as constituting funds intended for investment with BENCHMARK. CANDLER instructed ALLEN to open a bank account in ALLEN's name only and deposit the checks into that account.

[Doc. 35, ¶6] Count Seven alleges that the Defendants set up an account named "Benchmark-Joyce E. Allen" into which they deposited funds they knew to be illegally derived. The Defendants then attempted to pay the funds to themselves and third parties in the form of cashier's checks. The Court finds that these allegations sufficiently *charge* the crime of concealment money laundering because, similar to the Johnson case, they allege an unusual series of financial transactions (funds payable to Benchmark were given to the Defendants, who on the same day opened an account and deposited some of these funds; continued deposit of funds known to be illegally derived into the account; and the liquidating of the account into cashier's checks on the morning after Chandler's death[4]) in an attempt to distribute the illegally gotten proceeds.

The Court also observes that the Government does not have to include all of the evidence of concealment in the charging instrument and that some additional evidence supporting concealment may be presented at trial. Thus, the Court finds that the allegations in Count Seven that the Defendants violated §1956(a)(1)(B)(i) are not subject to dismissal for failure to state sufficient facts of intent to conceal as a matter of law. As discussed in part A above, in order to conclude that

---

[4]The Superseding Indictment alleges that Chandler committed suicide on March 1, 2012. [Doc. 35, ¶6]

17

the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. The Court finds that the facts alleged in the Superseding Indictment are sufficient to allege a violation of §1956(a)(1)(B)(i) and that the facts alleged may not be all the relevant facts regarding concealment. Thus, the Court agrees with the Government that ultimately this matter cannot be decided before trial. Accordingly, the Court finds that the Defendant's Motion to Dismiss Count 7 in Part Due to Failure to Establish an Offense [**Doc. 20**] should be **DENIED**.

### III. CONCLUSION

The Court has considered the parties' briefs and arguments along with the relevant case law and finds no basis to dismiss the charges in the Superseding Indictment. Accordingly, the Court **RECOMMENDS** that the Defendant's motions to dismiss the charges [**Docs. 16 and 20**] be **DENIED** and that their Motion to Dismiss Count 7 [**Doc. 18**] should be **DENIED as moot**.[5]

        Respectfully submitted,

          s/ H. Bruce Guyton
        United States Magistrate Judge

---

[5]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).