UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CR-90 |
| | ) | (VARLAN/GUYTON) |
| JOYCE E. ALLEN, and | ) | |
| SHARON KAY THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge H. Bruce Guyton (the "R&R") [Doc. 41]. The R&R addressed the following motions filed by defendant Joyce Allen: (1) Motion to Dismiss Indictment [Doc. 16]; (2) Motion to Dismiss Count 7 [Doc. 18]; and (3) Motion to Dismiss Count 7 in Part Due to Failure to Establish an Offense [Doc. 20]. The magistrate judge held a hearing on defendant Allen's motions during which the parties presented argument. Following supplemental briefing by both parties, the magistrate judge took the motions under advisement on October 30, 2012. The magistrate judge later issued the R&R [Doc. 41], recommending that the Court deny each of defendant Allen's motions [*Id.* at 18]. Defendant Allen submitted objections to the R&R [Doc. 49], and the government submitted a response to those objections [Doc. 51]. Defendant Sharon Thomas adopted defendant Allen's underlying motions [Docs. 23 and 37] but has not submitted objections to the R&R or otherwise joined defendant Allen's

objections, and the time for doing so has passed so that any objections are considered waived. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Fed. R. Crim. P. 51.

**I.     Background**

The defendants are charged in a seven-count superseding indictment [Doc. 35] with six counts of uttering counterfeited securities, in violation of 18 U.S.C. §513, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) [*Id.* ¶¶ 8, 15]. The conduct described in the indictment is alleged to have occurred from January 2012 through March 2012. The indictment alleges that defendant Allen owned and operated J. Allen and Associates, Inc. ("J. Allen Inc."), a business which identified potential investors and subsequently defrauded investors by selling them worthless investments [*Id.* ¶ 4]. The indictment alleges that defendants, acting on behalf of J. Allen Inc., accepted checks from investors payable to Benchmark Capital ("Benchmark") after representing to the investors that they had purchased an annuity investment with Benchmark, when in fact both defendants knew that such funds would not be placed with any company for investment [*Id.* ¶ 5].[1] The indictment also alleges that when defendants accepted checks from investors, defendants would have investors fill out an application [*Id.* ¶ 9]. Defendants would then sign the application on behalf of Benchmark and return it to investors [*Id.*]. The indictment further alleges that defendants withdrew the funds

---

[1] The superseding indictment alleges that Benchmark was a business owned by Charles Candler ("Candler") and operated for the purpose of defrauding investors [Doc. 35 ¶ 4].

2

they received from investors in the form of multiple cashier's and personal checks made out to themselves and other individuals [Doc. 35 ¶17].

In defendant Allen's motion to dismiss the indictment [Doc. 18], defendant Allen contends that the superseding indictment fails to state the alleged offenses because all counts fail to allege that defendant Allen uttered a security as defined by statute. In opposition, the government argues that the superseding indictment sufficiently sets forth the elements of the crimes charged, maintaining that Counts One through Six properly allege the utterance of a security because the investment applications constitute "investment contracts" [Doc. 34 at 3]. The magistrate judge found that the indictment properly alleges a security because the application for an annuity with Benchmark, along with defendant Allen's representations to investors that they were receiving annuities with Benchmark, could constitute an "investment contract" under 18 U.S.C. § 513(c)(3) as a matter of law [Doc. 41 at 8]. The magistrate judge held that there was a factual dispute as to the significance of the signed applications, however, and concluded that whether the instant applications were actually investment contracts in light of the circumstances was a question for the trier of fact [*Id.* at 12].

In defendant Allen's motion to dismiss Count Seven [Doc. 18], defendant Allen contends that Count Seven of the original indictment [Doc. 3] fails to state the offense of money laundering because it does not allege that defendant Allen acted with the requisite intent required by the statute. However, after the government brought the superseding

3

indictment [Doc. 35], defense counsel informed the magistrate judge that the motion to dismiss Count Seven had become moot [Doc. 41 at 12-13].

In defendant Allen's Motion to Dismiss Count Seven in Part Due to Failure to Establish an Offense [Doc 20], defendant Allen argues that Count Seven fails to allege facts that establish the intent to launder criminal proceeds by concealment. Defendant Allen argues that Count Seven merely alleges that defendants attempted to distribute proceeds of illegal activity through various checks rather than alleging that the checks served to conceal proceeds. The government responds that whether the alleged transactions were actually conducted to conceal criminal proceeds is a matter not subject to pretrial determination [Doc. 34 at 8]. The magistrate judge found the allegations in the superseding indictment sufficient to charge defendant Allen with the crime of concealment money laundering because they allege unusual financial transactions, including the continued deposit of illegally derived funds into an account and the liquidating of the account into cashier's checks made out to multiple individuals in a single day [Doc. 41 at 17].

## II. Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which defendant Allen has objected, considering the R&R [Doc. 41], the parties' underlying and supporting briefs, defendant Allen's objections, and the government's response to those objections, all in light of the relevant law.

**III. Analysis**

**A. Relevant Law**

The Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. Legally sufficient indictments implicate both the right to a grand jury's determination of probable cause to believe that the offense occurred and the Fifth Amendment's guarantee of due process of law and protection from double jeopardy. *Hamling v. United States*, 418 U.S. 87, 177 (1974). Similarly, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI.

Under Rule 7 of the Federal Rules of Criminal Procedure, "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). An indictment passes constitutional muster if it first, "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling*).

A defect in an indictment, such as its failure to state an offense, can be challenged by pretrial motion in accordance with Rule 12(b) of the Federal Rules of Criminal Procedure. In taking up such a motion a court "may make preliminary findings of fact

5

necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss an indictment for failure to state an offense is appropriate when "the facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." *Id.* at 665. Accordingly, a court may address a motion to dismiss when the issue presented is a question of law and the facts are undisputed. *Id.*; *see also United States v. Levin*, 873 F.2d 463, 470 (6th Cir. 1992) (noting dismissal was proper when facts were undisputed and motion presented a question of law).

It is against this background that the Court will discuss defendant each of Allen's objections to the R&R.

### B. Utterance of a Counterfeited Security under 18 U.S.C. § 513(a).

Defendant Allen first objects on the basis that the magistrate judge erred in ruling that an application for a security, together with the seller's representation that the buyer had purchased a security, could constitute a security under 18 U.S.C. § 513(a) as an investment contract. In support of this objection, defendant Allen asserts that § 513(a) only criminalizes the utterance of a counterfeited security, which requires a written document that qualifies as a security under the statute. Defendant Allen contends that the factual allegations in the superseding indictment do not make out the crime of uttering a

counterfeited security because the application at issue in this case is not a security and that "the statute that criminalizes the uttering of non-genuine documents cannot logically and permissibly be extended to cover an application that is accepted orally" [Doc. 49 at 14]. Defendant Allen further argues that as the statute is ambiguous, the Court should apply the rule of lenity and find that an application for a security does not constitute a security under § 513(c).

Section 513 criminalizes the making, utterance, or possession of a counterfeited security. 18 U.S.C. § 513(a). The statute defines "counterfeited" as a document that purports to be genuine but is not. 18 U.S.C. § 513(c)(1). Section 513(c) defines security as follows:

> (A) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916(c) of the Electronic Fund Transfer Act, money order, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property;
>
> (B) an instrument evidencing ownership of goods, wares, or merchandise;
>
> (C) any other written instrument commonly known as a security;
>
> (D) a certificate of interest in, certificate of participation in, certificate for, receipt for, or warrant or option or other right to subscribe to or purchase, any of the foregoing; or
>
> (E) a blank form of any of the foregoing[.]

7

18 U.S.C. § 513(c)(3). While there is a scarcity of case law defining "investment contract" under § 513(a), the Court is guided by the well-established rule that, "'[i]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, [and] common meaning.'" *United States v. Wade*, 266 F.3d 574, 579 (6th Cir. 2001) (quoting *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 207 (1997) (internal quotation marks omitted)). The words of a statute must also be read in the context of the statute. *Brown v. Gardner*, 513 U.S. 115, 118 (1984).

Defining investment contract as an agreement related to the expenditure of money for income or profit is consistent with other definitions of security within the statute, as many of the other definitions serve to evidence a relationship in which the parties share an obligation to each other (*i.e.* a note, bond, debenture, check, money order, or letter of credit). The statute is broader than including only documents that evidence the existence of a specific obligation, however, as it also includes a "right to subscribe to or purchase" any of the items described in subsection (A), 18 U.S.C. § 513(c)(3)(D), or "a blank form" of any of the items previously defined in subsection (A), 18 U.S.C. § 513(c)(3)(E). The fact that a counterfeited blank form or forged right to purchase are protected under the statute indicates that the statute is intended to cover a broad range of transactions involving an agreement to purchase securities, as neither instance involves the actual exchange of legal obligations but rather the potential for an exchange of legal obligations. A blank investment contract represents the potential for there to be an obligation between

8

two parties that subsequently agree to the contract, just as a right to purchase signifies a right to enter into an agreement that can exercised so long as the right exists.

The magistrate judge found that an application to purchase securities, along with the seller's oral representations that the buyer has purchased securities, could constitute a security under § 513(a) as an investment contract [R. 41 at 12]. The Court agrees with the magistrate judge's analysis, in part because of the definitions set forth in the statute but also because of the nature of the applications at issue in this case.[2]

Defendant Allen's argument that an orally accepted application cannot serve as an investment contract does not properly account for the nature of the transactions alleged to have taken place. In each count, with the exception of Count Two (where an application had previously been given to the investor), the government alleges that defendant Allen engaged in the following transaction: the investor would give defendant Allen a sum of money in exchange for an annuity from Benchmark; defendant Allen would orally represent to the investor that the investor had purchased such an annuity; and defendant Allen would return a copy of a previously filled-out application to the investor, signed by defendant Allen on behalf of Benchmark. From these facts, the documents in question are not "applications" in the conventional sense. The applications here were given while the parties made their agreement (investors' funds in exchange for an annuity), rather

---

[2] The Court notes that in at least one transaction, alleged in Count Four, Defendant Allen gave the investor a home equity agreement in addition to a signed application [Doc. 35 ¶ 12]. The Court agrees with the magistrate judge's conclusion that these facts would be evidence of indebtedness under § 513(c)(3)(A) or an instrument known as a security under § 513(c)(3)(C) [Doc. 41 at 8, n.3].

than being a prerequisite, or initial step, for making an agreement between the investors and Benchmark.

Based on the government's allegations, these applications are better characterized as evidencing the agreement made between the parties, as defendant Allen had already represented to the investors that they had purchased an annuity and the investors had given defendant Allen the funds to do so. The magistrate judge was correct in concluding that this constituted an investment contract because the benefits to the parties had been exchanged by the time defendant Allen returned the applications to the investors. Defendant Allen argues that an application for an annuity cannot not be thought of as "counterfeited," but if defendant Allen had investors fill out applications with the understanding that they were applying for an annuity when no such annuity existed, then the applications here could be counterfeited because they were not genuine applications to purchase a security. However, as the magistrate judge noted, there appears to be a factual dispute as to whether the investors actually understood that they had in fact purchased the annuity at the time they tendered payment to defendant Allen. Accordingly, because of the factual dispute as to the significance of these applications, the Court agrees with the magistrate judge's conclusion that whether the applications in this case were in fact investment contracts is an issue for the trier of fact [Doc. 41 at 11].

The magistrate judge's reading of § 513 is further supported by reference to the definition of "securities" under the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), which, like § 513, includes "investment contract" as a type of security covered by the Act. In

*Securities Exchange Commission v. W.J. Howey Co.*, the Supreme Court set forth the test for determining if a particular scheme is an investment contract: "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946); *see also McCoy v. Hilliard*, 940 F.2d 660, 1991 WL 132522, at *8 (6th Cir. July 19, 1991) (per curiam) (noting a contract is an investment contract for purposes of the Securities Act if it is "(1) a contract transaction or scheme whereby a person invests his money; (2) in a common enterprise; and (3) is led to expect profits" from the efforts of others). The Supreme Court has noted that "Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called." *Sec. Exch. Comm'n v. Edwards*, 540 U.S. 389, 393 (2004) (internal quotation marks omitted). In distinguishing securities transactions from other commercial dealings, courts are instructed to focus on the "economic realities" of the transaction. *McCoy*, 1991 WL 132522 at *8 (citing *Union Planters Nat'l Bank v. Commercial Credit Business Loans, Inc.*, 651 F.2d 1774, 1181 (6th Cir. 1981)).

In this case, the government alleges that investors gave defendants an investment, to purchase annuities with Benchmark, which the investors thought would generate income. This alleged transaction meets the definition of an "investment contract" under the analogous Securities Act, as there was an investment of funds into Benchmark, and the investors expected to receive a return with no further effort on their part. Defendant Allen contends that the application was not binding and that investors were aware of this

fact, but this a question for the finder of fact to determine, as these contentions are based on disputed facts. The magistrate judge simply concluded, and the Court agrees, that the government has adequately alleged that an investment contract existed so that the indictment sufficiently sets forth the elements for a violation of § 513.

Defendant Allen further argues that the rule of lenity should apply in this case, contending that the government's interpretation of § 513 is, at best, as reasonable as the interpretation offered by defendant Allen, so the Court must adopt defendant Allen's position [Doc. 49 at 13]. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. *United States v. Santos*, 553 U.S. 507, 514 (2008) (citing *United States v. Bass,* 404 U.S. 336, 347–349 (1971)). The rule of lenity only applies if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas,* 130 S.Ct. 2499, 2508–09 (2010) (quotation marks and citations omitted). The Sixth Circuit has described the rule of lenity as "a tiebreaker of last resort" that is appropriate only when, "'after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" *United States v. Morales*, 687 F. 3d 697, 701 (6th Cir. 2012) (quoting *United States v. Canal Barge Co., Inc.,* 631 F.3d 347, 353 (6th Cir. 2011)). The Court finds that the magistrate judge's conclusion in this case was appropriate and that the meaning of "investment contract" is not ambiguous in light of the text, structure, and context of the statute. Accordingly, the Court declines to apply the rule of lenity in this case.

In light of the definition set forth in § 513 and having considered the circumstances in this case, the Court agrees with the magistrate judge that the annuity application and defendant Allen's accompanying oral representations may constitute an investment contract as a matter of law. Whether the applications were in fact investment contracts will be determined by the trier of fact. Accordingly, the Court will overrule defendant Allen's objection, adopt the magistrate judge's recommendation [Doc. 41], and **DENY** defendant Allen's motion to dismiss the indictment [Doc. 16].

### C. Conspiracy to Commit Money Laundering by Concealment under 18 U.S.C. § 1956(h)

Defendant Allen objects to the magistrate judge's conclusion that the superseding indictment alleges sufficient facts to establish the offense of money laundering. Defendant Allen contends that the actions listed in the indictment do not establish money laundering by concealment. The government responds that it is a decision for the jury whether the evidence offered by the United States is sufficient to prove concealment money laundering.

"A violation of § 1956(a)(1)(B)(i) . . . consists of the following three elements: '(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct[ing] or attempt[ing] to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the . . . source, ownership or control of the proceeds.'" *United States v. Marshall*, 248 F.3d 525, 538 (6th Cir. 2001) (quoting *United States v. Prince*, 214 F.3d 740, 747 (6th Cir.
13

2000)). In determining what type of conduct would constitute concealment money laundering, the *Marshall* court set forth the following non-exhaustive list of the types of evidence indicative of intent to conceal a financial transaction:

> [A] variety of types of evidence have been cited by this and other circuits as supportive of evidence of intent to disguise or conceal. They include, among others, statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals.

*Id.* (quotation omitted). In *United States v. Johnson*, a case cited by the magistrate judge, the Sixth Circuit held that the issuance of multiple cashier's checks in short succession was the type of unusual structure of a financial transaction that could serve as evidence of an intent to conceal illegal proceeds. 26 F. App'x 441, 446—47 (6th Cir. 2001) (finding evidence sufficient for conviction under 18 U.S. 1956(h) where defendant had opened back account under the name of a third party to conceal the owner of the funds and the next day withdrew large amounts from the account in the form of cashier's checks in quick succession).

The Court agrees with the magistrate judge's conclusion. Count Seven states sufficient allegations to charge defendant Allen with concealment money laundering. The superseding indictment alleges that defendant Allen invested checks made out to Benchmark in an account opened under defendant Allen's name [Doc. 35 ¶ 6]. The superseding indictment also alleges that defendant Allen and defendant Thomas

continually deposited checks made out to Benchmark in an account under defendant Allen's name as they were received from investors, knowing the proceeds to be illegal. Defendant Allen, along with defendant Thomas, then quickly began liquidating the account by withdrawing multiple cashier's checks made out to numerous individuals. The magistrate judge properly determined that this series of financial transactions was "unusual" and was similar to the series of transactions at issue in *Johnson*. The quick succession of opening the account and depositing checks and the similarly quick liquidation of the account all serve as evidence of defendant Allen's intent to conceal the true nature of the illegally obtained proceeds. Defendant Allen has presented no evidence or law causing the Court to question these findings. Accordingly, the Court will adopt the magistrate judge's recommendation and **DENY** defendant Allen's motion to dismiss Count Seven [Doc. 20], as the allegations sufficiently establish concealment money laundering.

### III. Conclusion

In sum, after reviewing the record in this case, including the R&R, the objections, the underlying briefs, and the relevant law, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motions to dismiss the indictment. Further, the Court agrees with the magistrate judge's analysis and findings as applied to both defendants. Accordingly, and for the reasons previously stated, defendant Allen's objections to the R&R [Doc. 49] are **OVERRULED**, the R&R [Doc. 41] is **ACCEPTED in whole** as to defendant Allen, and defendant Allen's Motion to Dismiss

[Doc. 16] as well as defendant Allen's motion to dismiss Count 7 in Part Due to Failure to Establish an Offense [Doc. 20] are hereby **DENIED**. Defendant Allen's motion to dismiss Count 7 [Doc. 18] is **DENIED** as moot. The R&R [Doc. 41] is also hereby **ACCEPTED in whole** as to defendant Thomas.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE