IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-CR-90 |
| v. | ) | |
| | ) | |
| JOYCE E. ALLEN, | ) | |
| SHARON KAY THOMAS, | ) | (VARLAN / GUYTON) |
| BRIAN MURPHY, and | ) | |
| DONA RECTOR, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on April 4, 2014, for a motion hearing on the Defendants' six motions to dismiss the Third Superseding Indictment:

> (1) Motion to Dismiss Count 10 [Doc. 83], filed by Defendant Sharon Kay Thomas on August 5, 2013;
>
> (2) Motion to Dismiss Count 10 in Part Due to Failure to Establish an Offense [Doc. 85], filed by Defendant Sharon Kay Thomas on August 5, 2013;
>
> (3) Motion to Dismiss Indictment - Counts 4 Through 10 [Doc. 88],[1] filed by Defendant Joyce E. Allen on August 29, 2013;
>
> (4) Motion to Dismiss Count 10 in Part Due to Failure to Establish an

---

[1] Defendant Thomas has moved [Doc. 97] to adopt this motion filed by Defendant Allen. Because Defendant Thomas is also charged in Count Ten, her Motion to Adopt [**Doc. 97**] is **GRANTED**.

1

Offense [Doc. 90], filed by Defendant Joyce E. Allen on August 29, 2013;

(5) Motion to Dismiss Indictment - Count 3 [Doc. 93], filed by Defendant Joyce E. Allen on September 3, 2013;[2] and

(6) Defendant Dona Rector's Motion to Dismiss Second Superseding Indictment - Count 2 - Based on Constitutional and Procedural Insufficiency [Doc. 101], filed on September 3, 2013.

Assistant United States Attorney Frank M. Dale, Jr., appeared on behalf of the Government.

Attorney Jonathan Patrick Harwell represented Defendant Joyce E. Allen. Attorney John E. Eldridge appeared on behalf of Defendant Sharon Kay Thomas. Attorneys Gregory P. Isaacs and Andrea B. Mohr represented Defendant Brian Murphy. Attorney Michael B. Menefee appeared on behalf of Defendant Dona Rector. All four Defendants were also present. The Court heard the arguments of the parties and took the motions under advisement. For the reasons discussed below, the Court finds no basis to dismiss any part of the Third Superseding Indictment.

---

[2]The Court notes that Defendant Brian Murphy has filed a Motion to Adopt [Doc. 133] all motions filed by his Codefendants. Defendant Murphy does not explain how his Codefendant's motions to dismiss various counts of the Third Superseding Indictment apply to him. Because Defendant Murphy is charged only in Counts One and Three of the Indictment, the Court finds that the motions [Docs. 83, 85, 88, 90, and 101] by Defendants Allen, Thomas, and Rector to dismiss Counts Two and Four through Ten of the Indictment are not relevant to Defendant Murphy. Additionally, at the April 4 hearing, Defendant Murphy's counsel Attorney, Greg Isaacs, stated that Defendant Murphy no longer wanted to join in Defendant Rector's motion [Doc. 101] to dismiss Count Two. Only Defendant Allen's motion [Doc. 93] to dismiss Count Three of the Indictment appears to be relevant to Defendant Murphy. Accordingly, Defendant Murphy's request to join in his Codefendants' motions to dismiss [**Doc. 133**] is **GRANTED** with regard to Document 93 and is **DENIED** with regard to Documents 83, 85, 88, 90, and 101.

2

# I. CHARGES

The Third Superseding Indictment [Doc. 141][3] alleges that from 2000 until his death on March 1, 2012, Charles Candler, owner of Benchmark Capital "operated a scheme to defraud materially and to obtain money by materially false and fraudulent pretenses, representations and promises[.]" [Doc. 141, ¶¶1,10] Defendant Joyce E. Allen, president of J. Allen and Associates, is alleged to have sold Benchmark Capital annuity investments. [Doc. 141, ¶¶3, 5] The Indictment states that Defendant Sharon Kay Thomas worked at J. Allen and Associates [Doc. 141, ¶7]. Defendant Brian Murphy was the president of Cornerstone Mortgage, which shared an office with Benchmark Capital. [Doc. 141, ¶6] Defendant Murphy is alleged to have sold "worthless investments, including investments purportedly underwritten by BENCHMARK." [Doc. 141, ¶6] Defendant Dona Rector was a mortgage broker [Doc. 141, ¶8].

Defendants Murphy and Allen are charged with conspiracy to commit mail and wire fraud (Count One) from 2000 to March 2, 2012. Defendants Allen, Thomas, and Rector are charged with conspiracy to commit wire fraud (Count Two) from July 16, 2008, to March 2, 2012. Defendants Allen and Murphy are charged with conspiracy to commit money laundering (Count Three) from 2000 to March 2, 2012. Defendant Allen is charged with six counts of uttering fraudulent securities (Counts Four through Nine) on January 10, 16, 17, 26, and February 7 and 17, 2012. On each of these dates, the Indictment alleges that Defendant Allen "did knowingly utter counterfeit securities, to wit, investment contracts with BENCHMARK, with the intent to deceive

---

[3]The Defendants' motions were filed with regard to the Second Superseding Indictment. The Third Superseding Indictment, which was filed on March 18, 2014, only made changes with regard to the forfeiture allegations. Thus, the Court will apply the parties' arguments to the Third Superseding Indictment.

individuals, as identified below, who purchased such counterfeit securities[.]" [Doc. 141, ¶35] Defendants Allen and Thomas are also charged with conspiracy to commit money laundering (Count 10) from February 16, 2012, to March 9, 2012.

## II. POSITIONS OF THE PARTIES

Defendant Rector contends [Doc. 101] that Count Two of the Third Superseding Indictment should be dismissed because (1) it charges a legal impossibility in alleging that she attempted to intend or attempted to conspire to commit wire fraud and (2) it fails to give sufficient notice of where, when, or how the alleged crime occurred. The Government responds [Doc. 150] that Defendant Rector is charged with conspiracy, not with attempt or with merely intending to devise schemes to defraud. It also contends that the Third Superseding Indictment contains sufficient facts to put Defendant Rector on notice of the crime she is alleged to have committed.

Defendants Allen and Murphy argue [Doc. 93] that Count Three, charging them with conspiracy to commit money laundering, must be dismissed for failing to state an offense. They contend that the regular payment of dividends as part of a Ponzi scheme does not constitute money laundering. The Government responds [Doc. 151] that whether the financial transactions at issue in this case constitute "proceeds" under the money laundering statute is a question of fact for the jury to determine. Alternatively, it argues that Count Three does not limit the financial transactions to the payment of dividends to lull investors into continuing with the scheme. Finally, the Government asserts that because conspiracy to commit mail and wire fraud and conspiracy to commit money laundering both carry the same maximum penalty of twenty years incarceration, the Court of Appeals for the Sixth Circuit does not limit proceeds to profits, to the exclusion of lulling dividend

4

payments.

In four of their motions [Docs. 83, 85, 88, and 90], Defendants Allen and Thomas seek to reargue motions they filed with respect to the Superseding Indictment. Defendants Allen and Thomas claim that the Third Superseding Indictment fails to state the alleged offenses because (1) all counts fail to allege that the Defendants uttered a security as defined by statute, (2) Count Ten fails to allege the intent element, and (3) Count Ten fails to allege facts that establish intent to launder criminal proceeds by concealment. The Government responds [Docs. 87, and 144] that the undersigned has already recommended [Doc. 41] that these motions be denied and that District Judge Varlan has accepted [Doc. 52] the undersigned's recommendations in whole. Thus, the Government argues that this ruling has now become the law of the case and that the Defendants have not shown any extraordinary circumstances warranting the Court to revisit these issues.

## III. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. The Court begins by observing that "a trial may be held in a serious federal criminal case only if a grand jury has first intervened" and issued an indictment or presentment. Russell v. United States, 369 U.S. 749, 760-61 (1962). Legally insufficient indictments implicate not only the right to a grand jury's determination of probable cause to believe that the offense occurred but also the Fifth Amendment's guarantee of due process of law and protection against being twice placed in jeopardy for the same offense. Hamling v. United States, 418 U.S. 87, 177 (1974); Russell, 369 U.S. at 761. Also relevant is the Sixth Amendment's provision that "[i]n all criminal prosecutions, the

5

accused shall enjoy the right . . . to be informed of the nature and the cause of the accusations[.]" U.S. Const. amend. VI; Russell, 369 U.S. at 761.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S. at 117; United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079.

The Defendants challenge the legal sufficiency of the Third Superseding Indictment, arguing that it does not sufficiently state the elements of the offenses alleged and that it also fails to state sufficient facts to put them on notice of the charged crimes. Specifically, Defendant Rector challenges the sufficiency of Count Two, arguing that it alleges a legal impossibility in charging her with conspiracy to commit wire fraud. She also contends that the Indictment fails to allege facts regarding the time, place, and manner of her alleged participation in the conspiracy to commit wire fraud. Next, Defendants Allen and Murphy argue that Count Three does not allege the offense of

conspiracy to commit money laundering because dividend payments are not proceeds. Finally, Defendants Allen and Thomas seek to reassert arguments regarding the sufficiency of Counts Four through Ten, asserting that these counts fail to allege sufficient facts and an essential element. The Court examines each of these arguments in turn.

### A. Count Two–Conspiracy to Commit Wire Fraud

Defendant Rector argues that Count Two of the Third Superseding Indictment must be dismissed because (1) it alleges a legal impossibility in charging her with attempting to intend or conspiring to intend and (2) it fails to allege sufficient facts with regard to the time, place, and manner of her involvement with the conspiracy to provide notice of the crime with which she is charged. The Government responds that Count Two charges Defendant Rector with devising schemes to defraud, not with intending to devise such schemes or with attempted conspiracy. Thus, the Government maintains that Count Two, as charged, does not allege a legal impossibility. It also argues that the Indictment provides both the dates (from July 16, 2008 to March 2, 2012) and the manner and means (using email to create fraudulent documents that were provided to mortgage lenders) with regard to Defendant Rector's conspiring to commit wire fraud.

Count Two of the Third Superseding Indictment alleges as follows:

> The Grand Jury realleges and incorporates by reference paragraphs 1 through 26 of this Indictment as if fully set forth herein.

> The Grand Jury further charges that from on or about July 16, 2008 and continuing through on or about March 2, 2012, in the Eastern District of Tennessee, the defendants, ALLEN, THOMAS, RECTOR and WRIGHT did knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit certain offenses against the

7

United States including violations of Title 18, United States Code, Section 1343.

## OBJECTS OF THE CONSPIRACY

It was a part and an object of the conspiracy that the defendants, ALLEN, THOMAS, RECTOR and WRIGHT, and others known and unknown to the Grand Jury, having devised schemes and artifices to defraud and for obtaining money and property from individuals and financial institutions by means of false and fraudulent pretenses, representations, and promises, would and did cause to be transmitted by wire communication in interstate commerce any writings, signals, pictures, and sounds for the purpose of executing said schemes and artifices, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

The defendants, ALLEN, THOMAS, RECTOR and WRIGHT and others known and unknown to the Grand Jury carried out the conspiracy in the following manner and using the following means, among others: By use of wire communication in interstate and foreign commerce, to wit, communication by email of the Internet and communication by other means, in conjunction with creating and causing to be created documents that contained false and fraudulent information that would be provided to and considered by mortgage lenders in making the decision of whether to lend funds secured by mortgages.

In violation of Title 18, United States Code, Section 1349.

[Doc. 141, ¶¶27-30 (paragraph numbers omitted)]

*(1) Sufficiency of Elements*

Defendant Rector first challenges the sufficiency of the elements of conspiracy to commit wire fraud as alleged in Count Two. She argues that reading the conspiracy statute, 18 U.S.C. § 1349, and the wire fraud statute, 18 U.S.C. § 1343, together, requires that she conspired to

8

or attempted to intend to devise a scheme to defraud. The Government responds that no court has held that conspiracy to commit wire fraud is a legal impossibility and that, in any event, Count Two charges Defendant Rector with conspiring to devise schemes to defraud, not with attempting or merely intending to do so.

Title 18, §1343 of the United States sets forth the crime of wire fraud:

> Whoever, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate . . . commerce any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title, or imprisoned not more than 20 years or both.

"The first element of wire fraud . . . is that the defendant devised or willfully participated in a scheme to defraud. The second is that he used or caused to be used an interstate wire communication 'in furtherance of the scheme'; and the third, that he intended 'to deprive a victim of money or property.'" United States v. Faulkenberry, 614 F.3d 573, 581 (6th Cir. 2010) (quoting United States v. Prince, 214 F.3d 740, 748 (6th Cir. 2000)).

Section 1349 provides the penalty for one who attempts or conspires to violate one of the fraud statutes: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Section 1349 does not provide any additional elements to be "read together" with §1343. Instead, §1349 merely states that the penalty for conspiracy to commit wire fraud is the same as that for wire fraud itself. Thus, the statutes under which the Defendant is charged do not require the linguistic acrobatics of which the Defendant complains.

9

The conspiracy portion of Count Two actually derives from the general conspiracy statute, 18 U.S.C. § 371, which proscribes a conspiracy to commit a substantive offense defined in another federal statute.[4]  The elements of conspiracy to commit an offense are:

> (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

United States v. Meyers, 646 F.2d 1142, 1143-44 (6th Cir. 1981).  The Court discerns no conflict between the elements of conspiracy and the elements of wire fraud.  Moreover, the absence of a citation to § 371 in Count Two does not render it constitutionally insufficient because it is clear from both the title and the language of Count Two that it charges conspiracy to commit wire fraud.  See Biskind v. United States, 281 F. 47 (6th Cir. 1922) (holding that citation to the wrong statute is not fatal to the indictment).  The Court finds that Count Two of the Third Superseding Indictment alleges all of the essential elements of conspiracy to commit wire fraud.

*(2)  Sufficiency of Facts Alleged*

Defendant Rector also argues that Count Two fails to provide notice of the crime she is alleged to have committed, because from the face of Count Two, she cannot determine when or where the alleged crime occurred.  She argues that the Indictment contains no facts showing how or when she committed the underlying offense of wire fraud.  She states that although Count Two

---

[4]Section 371 also proscribes a conspiracy to defraud the United States, but Count Two does not charge that portion of the statute.

incorporates paragraphs 1 through 26, she is only mentioned in paragraph 8, which states that she was a mortgage broker in Knoxville, Tennessee. Moreover, she asserts that she was not employed by any of the companies involved in the alleged conspiracy and, thus, does not even have an employment date to use as a reference for how and when she committed the offense.

At the April 4 hearing, the Government argued that the Indictment is constitutionally sufficient. It maintains that it is not required to allege the overt acts in which Defendant Rector engaged in furtherance of the conspiracy to commit wire fraud. The Government further states that it has provided Defendant Rector with full discovery, including two Memoranda of Interview prepared by Special IRS Agent David Martin, to which specific examples of email sent by Defendant are attached. Thus, the Government contends that Defendant Rector is aware of her acts in furtherance of the conspiracy and the identities of those with whom she acted.

It is well-settled that an indictment must contain facts, not just legal conclusions: "A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." United States v. Cruikshank, 92 U.S. 542, 558 (1875). The allegations in the indictment, alone, must permit the court to determine whether "the acts charged will–if proved– support a conviction for the offense alleged." Id. at 559. Stated another way, "[t]o be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." United States v. Superior Growers Supply, Inc., 982 F.2d 173, 177 (6th Cir. 1992); see also Landham, 251 F.3d at 1079 (quoting Superior Growers).

In evaluating the constitutional sufficiency of the present charges, the Court observes that it must use "'a common sense construction'" to determine whether the indictment gives the

Defendant fair notice of the charges. United States v. Maney, 226 F.3d 660, 663 (6th Cir. 2000) (quoting Allen v. U.S., 867 F.2d 969, 971 (6th Cir. 1989)). First, the Court finds that Count Two of the Third Superseding Indictment alleges the crime "with reasonable particularity of time and place[.]" Cruikshank, 92 U.S. at 558. In the instant case, the Indictment alleges that the conspiracy occurred over a twelve-year period from "in or about 2000 through on or about March 2, 2012, in the Eastern District of Tennessee[.]" Allegations that a conspiracy occurred between certain dates is generally sufficient to put an individual on notice of the time frame of the crime. See United States v. Willis, 232 F. App'x 527, 538 (6th Cir.) (observing that "the exact date of the conspiracy is not an element of the crime"), cert. denied, 552 U.S. 1084 (2007). That the Defendant is alleged to have joined in a long-running conspiracy does not render the Indictment constitutionally insufficient.

With regard to Defendant Rector's arguments that the Indictment does not put her on notice of the manner of her involvement in the alleged wire fraud conspiracy, the Court disagrees. Count Two alleges that Defendant Rector conspired with Defendants Allen, Thomas, and Wright, to commit wire fraud by communicating by email and "other means" in order to "create[] documents that contained false and fraudulent information that would be provided to and considered by mortgage lenders" in deciding whether to lend money "secured by mortgages." [Doc. 141, ¶32] In other words, Defendant Rector is alleged to have used email to create false mortgage documents. While the indictment must allege an overt act in furtherance of the conspiracy, it does not have to allege an overt act with regard to each coconspirator. United States v. Taylor, 176 F.3d 331, 336 (6th Cir. 1999). The Court finds the brief factual allegations in Count Two to be constitutionally sufficient to charge the Defendant with conspiracy to commit wire fraud.

The Court agrees with the Government's contention in oral argument that what the Defendant actually seeks is notice of the date or dates of *her* alleged involvement in the conspiracy. Such requests are more properly the subject of a motion for a bill of particulars, rather than a reason to dismiss the indictment. "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). Whether a defendant is entitled a bill of particulars providing the date he or she allegedly joined a conspiracy is not resolved in this circuit.[5] Nevertheless, the Court observes that "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other

_____

[5]The cases pertaining to the particularization of the date a conspirator joined the conspiracy are not in harmony. The Court of Appeals for the Sixth Circuit has upheld the denial of particularization of the specific dates of a defendant's involvement in a conspiracy. See United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004) (no abuse of discretion in denying particularization of the "temporal scope" of the conspiracy when the indictment stated that the conspiracy occurred from April 1999 to August 2000); United States v. Hayes, No. 88-5967, 1989 WL 105938, *3 (6th Cir. Sept. 14, 1989) (affirming denial of bill of particulars for date that a defendant joined a conspiracy when the indictment alleged it lasted from "early 1987 to November 17, 1987"). Our appellate court has also upheld the provision of more specific dates of a coconspirator's involvement when the trial court exercised its discretion to order those dates disclosed. See, e.g., United States v. Arnold, 890 F.2d 825, 829 (6th Cir. 1989) (observing that bill of particulars required identification of the date the defendant joined the conspiracy alleged to have occurred on or about August 1983); United States v. Dempsey, 733 F.2d 392, 394 (6th Cir. 1984) (approving a bill of particulars giving the approximate date that each defendant entered the conspiracy when the indictment itself was "bare bones"); see also United States v. Fears, 450 F. Supp. 249, 251 (E.D. Tenn. 1978) (directing, without further analysis, the government to file a bill of particulars giving the date and approximate hour the defendant allegedly made the telephone call charged in the indictment). Although decisions regarding the need for a bill of particulars are very case specific, the Court's examination of the case law on this issue reveals the importance of the information available to a defendant from the indictment and discovery. Further particularization may not be necessary when the conspiracy was relatively brief in duration and/or the defendant has received ample discovery

13

gnds by stat., <u>United States v. Caseslorente</u>, 220 F.3d 727 (6th Cir. 2000) (on sentencing issue).

In the present case, the Indictment alleges a conspiracy spanning twelve years and provides no specific dates that Defendant Rector can use to discern her alleged involvement. As argued by Defendant Rector, she was not employed by Benchmark Capital, J. Allen and Associates, or Cornerstone Mortgage, the three companies to which the introductory paragraphs of the Indictment refer. Moreover, the only mention of Defendant Rector in the Introduction is a single sentence in paragraph 8, which states in full "[t]he defendant, DONA RECTOR ("RECTOR") was, at all times relevant to the charges contained in this Indictment, employed as a mortgage broker in Knoxville, Tennessee."

The Government argues that Defendant Rector is aware of her acts in furtherance of the conspiracy from discovery. It contends that the Defendant has two Memoranda of Interview prepared by Special IRS Agent David Martin, to which specific examples of emails sent by Defendant are attached. Special IRS Agent David Martin's Memorandum of Interview from the interview of Defendant Rector on May 10, 2013, states that Rector "estimated that she had assisted 40 to 60 clients with refinancing their homes regarding the BENCHMARK CAPITAL equity program." Any communications by Defendant Rector that could constitute an overt act in furtherance of the wire fraud conspiracy would be related to the finite number of clients participating in the Benchmark Capital equity program. Although the Indictment fails to provide any specific details with regard to the alleged overt acts of Defendant Rector, the Court finds that the Defendant has access to this information through discovery.[6]

_____

[6]The Court further notes that the Government had all of the discovery in this case scanned into an electronic format and provided it to defense counsel in a searchable form.

After reviewing both the elements and the statements of fact alleged, the Court finds that Count Two sufficiently states the offense of conspiracy to commit wire fraud. Thus, the Court recommends that Defendant Rector's motion to dismiss Count Two [Doc. 101] be denied.

### B. Count Three–Conspiracy to Commit Money Laundering

Count Three charges Defendants Allen and Murphy with conspiring to conduct financial transactions, with the intent to promote mail fraud and wire fraud, while knowing that the property involved in the financial transactions represented proceeds of unlawful activity. The Defendants argue that Count Three fails to state an offense because the financial transactions at issue did not involve "proceeds." They contend that the regular payment of dividends as part of a Ponzi scheme does not constitute money laundering. The Defendants assert that the Indictment alleges that the codefendants paid a portion of the funds collected "under the guise of paying dividends" and, therefore, Count Three of the Indictment fails to allege the illegal use of "proceeds" sufficient to support a money laundering conviction.

The Government responds that, first, the Indictment does not limit the illegal financial transactions in Count Three to the payment of dividends. Because the facts regarding the financial transactions at issue are in dispute, this is not a question that can be resolved by the Court before trial. Second, the Government states that as a matter of law, charging a defendant with both conspiracy to commit wire and mail fraud and with conspiracy to commit money laundering does not create a merger problem because both violations carry the same penalty.

15

*(1) Propriety of Pretrial Motion*

First, the Court must determine if the issue raised by the Defendants is a matter of fact for the jury to determine or a matter of law for this Court. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Specifically, a defect in the indictment, such as its failure to state an offense, can be challenged before trial. Fed. R. Crim. P. 12(b)(3)(B). Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id. at 665. In Jones, the appellate court held that the district court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" Id.

Similarly, in United States v. Levin, the Court of Appeals for the Sixth Circuit determined that "the district court concluded from undisputed extrinsic evidence that a Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the intent required to convict the appellees of the controversial counts of the indictment which were dismissed with prejudice." 973 F.2d 463, 470 (6th Cir. 1992). The court held this disposition of the case upon

a pretrial motion was appropriate because the motion raised "a legal issue, namely the ability of the government to prove intent which was an integral element of [the statute charged] . . . after the trial court had considered undisputed extrinsic evidence." Id.

From these cases and Rule 12(b), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. Levin, 973 F.2d at 470; Jones, 542 F.2d at 665. The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is entitled to a judgment of acquittal. However, the prosecution's evidence is tested at trial, not in a preliminary proceeding.

United States v. Short, 671 F.2d 178, 183 (1982); see also Levin, 973 F.2d at 472 (Martin, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

In the instant case, the Court finds that the Indictment does not limit the financial transactions at issue in Count Three to the payment of dividends. Paragraph 1 of the Third Superseding Indictment, which is expressly incorporated into Count Three, states that "[t]he business

17

purpose of BENCHMARK was to defraud investors by taking their funds in exchange for worthless and nonexistent investments, and paying *a portion* of funds received to earlier investors under the guise of paying dividends, interest and mortgage payments, there by encouraging investors to trust their funds to BENCHMARK." [emphasis added] On the other hand, paragraph 6 (also expressly incorporated into Count Three) states that funds collected for investments were "converted to the personal use of Allen's and other persons[.]" The Court finds that what constitutes the financial transactions conducted with the intent to promote mail and wire fraud is not limited to the payment of dividends. Because the relevant facts are disputed, the issue remains one for the jury. The Court recommends that the Motion to Dismiss Indictment - Count 3 [Doc. 93] be denied.

*(2) Double Jeopardy Violation*

Although the Court finds that the issue raised by the Defendants contains disputed facts, the Court will analyze the legal question raised by the Defendants in order to provide guidance for a potential merger question arising at trial. The Court finds that the issue advanced by Defendants Allen and Murphy raises the specter of a Double Jeopardy violation: Are Defendants Allen and Murphy being charged with conspiracy to commit mail and wire fraud and conspiracy to commit money laundering for the same acts involving the payment of dividends?[7] The Defendants' argument has its origin in the Supreme Court's examination of whether charging illegal gambling

---

[7] "'[A] merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum than the associated money laundering charge.'" Buffin v. United States, 513 F. App'x 441, 444 (6th Cir. 2013) (quoting United States v. Crosgrove, 637 F.3d 646, 655 (6th Cir. 2011)). "Put differently, if the predicate offense is, standing alone, "sufficient to prove both money laundering and mail/wire fraud," the two crimes potentially merge." Id.

18

and money laundering created a double jeopardy problem.  See  United States v. Santos, 553 U.S. 507, 509-24 (2008).  In Santos, a plurality of the Supreme Court held that because the money laundering statutes do not define the term "proceeds," that term can be defined as "profits" to comply with the rule of lenity in certain instances, such as the illegal gambling statute in that case, depending upon the underlying predicate offense.  Id. at 511-14.  In this case, the Defendants argue that the money paid out as purported dividends cannot be considered "proceeds" because it was not profits.

In Santos, the Supreme Court considered "whether the term 'proceeds' in the federal money-laundering statute, 18 U.S.C. §1956(a)(1), means 'receipts' or 'profits[,]'" in the context of a violation of the illegal gambling statute.  Id. at 509.  Justice Scalia, joined by Justices Souter, Ginsberg, and Thomas,[8] held that "proceeds" means "profits," because the undefined term "proceeds" is ambiguous and the rule of lenity dictates an interpretation more favorable to the defendant.  Id. at 511-14.  In addressing the government's argument that the "profits" interpretation defeated the purpose of the money laundering statute, Justice Scalia pointed out a merger problem inherent in the "'receipts' interpretation"–payment of the winner in an illegal lottery would cause the violation of the gambling statute to "'merge' with the money-laundering statute[,]" increasing the penalty, which is five years under the gambling statute, by an additional twenty years under the money laundering statute.  Id. at 515-16.  "Interpreting 'proceeds" to mean 'profits' eliminates the merger problem[, because t]ransactions that normally occur during the course of running a lottery are not identifiable uses of profits and thus do not violate the money-laundering statute."  Id. at 517.

Justice Stevens concurred in Justice Scalia's judgment but wrote separately, because he concluded that whether "proceeds" means "receipts" or "profits" under the money laundering

_____

[8]Justice Thomas joined in all but Part IV of the lead opinion.  Id. at 508.

statute may differ based upon the predicate offense at issue. Id. at 525-27 (Stevens, J., concurring in judgment). Looking to the legislative history of the money laundering statute, Justice Stevens found that Congress expressly "intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." Id. at 526. Justice Stevens was also concerned about a "merger problem": "Allowing the Government to treat the mere payment of an expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business." Id. at 527. The dissenting opinion, authored by Justice Alito and joined by Chief Justice Roberts and Justices Kennedy and Breyer, holds that "proceeds" means "gross receipts," an interpretation which they find supports the purposes of the money laundering statute and avoids placing an unnecessary burden on the prosecution in proving the offense. Id. at 531-40 (Alito, J., dissenting). The dissent reasoned that "the so-called merger problem is fundamentally a sentencing problem, and the proper remedy is a sentencing remedy." Id. at 547.

In the instant case, the Defendants also argue that proceeds must mean profits, relying on the ruling in United States v. Van Alstyne, 584 F.3d 803, 815 (9th Cir. 2009), which held that issuing distribution checks in a Ponzi scheme in order to inspire victims to invest more funds cannot constitute money laundering. The Government responds that in United States v. Kratt, the Court of Appeals for the Sixth Circuit announced a two part test for determining when the Santos plurality opinion applies, i.e., when "proceeds" under the money laundering statute means "profits." 579 F.3d 558, 562 (6th Cir. 2009). According to Kratt, proceeds means profits only when (1) the "predicate

20

offense creates a merger problem that leads to a radical increase in the maximum statutory sentence" and when (2) "nothing in the legislative history suggests that Congress intended such an increase." Id.; United States v. Cosgrove, 637 F.3d 646, 654-55 (6th Cir. 2011). In the instant case, the Government argues that the predicate offense named in Count One, conspiracy to commit mail and wire fraud, carries a maximum punishment of twenty years, which is the same maximum penalty established for money laundering. Accordingly, the Government argues that this case does not present a merger problem of the type that concerned the Supreme Court in Santos.

The Court agrees with the Government that proceeds does not have to be restricted to profits in this case. Prior to the Santos opinion, the case law in this circuit held that "proceeds" meant gross receipts for purposes of the companion money laundering statutes, §§1956 and 1957. Kratt, 579 F.3d at 560; see also Prince, 214 F.3d at 747. In Kratt, our appellate court grappled with how to define "proceeds" in the wake of Santos and concluded that the plurality opinion in Santos required courts to evaluate each of the predicate offenses permitted by the money laundering statutes on an "offense-by-offense" basis in order to determine whether they fell into the "profits" camp or "gross receipts" camp.[9] Id. at 563. In formulating a standard by which courts would make this determination, the court in Kratt looked to the concerns expressed by Justice Stevens in his concurring opinion regarding how to discern which predicate offenses required a showing of profits and which required gross receipts, and the appellate court arrived at the two prong test quoted above. Id. at 561-62.

---

[9]The appellate court observed that this was a particularly "unsatisfying" approach, both for the practical difficulties it imposed upon litigants and courts, as well as its impact upon the actual application of the rule of lenity to defendants. Kratt, 579 F.3d at 563. Nevertheless, the appellate court adopted this approach. For cases in which the predicate offense does not meet the two-pronged test in Kratt, proceeds "continues to mean receipts[.]" Cosgrove, 637 F.3d at 654.

21

Applying the <u>Kratt</u> test to the instant predicate offense of conspiracy to commit mail and wire fraud, the Court concludes that the maximum punishment[10] is the same as that for conspiracy to commit money laundering.[11] <u>See</u> <u>Jamieson v. United States</u>, 692 F.3d 435, 442 (6th Cir. 2012) (holding that "[b]ecause the predicate offense of mail fraud carries a maximum sentence that is . . . equal to the maximum statutory sentences under § 1956 . . ., there is no risk that merging the predicate offense would increase Jamieson's sentence). Thus, charging both Count One and Count Three does not create the merger problem feared by the <u>Santos</u> plurality. Accordingly, application of the <u>Kratt</u> test reveals that proceeds may be defined as gross receipts in this case.

The Court finds that Count Three properly states the offense of money laundering and recommends that the Defendants' motion [Doc. 93] to dismiss Count Three be denied.

### C. Counts Four through Ten–Uttering Fraudulent Securities and Conspiracy to Commit Money Laundering

In their motions to dismiss Counts Four through Ten, Defendants Allen and Thomas seek to reassert the arguments they previously made with regard to these same counts (formerly Counts One through Seven) in the original Superseding Indictment. The Government objects to the Court's reconsidering these arguments. It contends that the undersigned has issued a Report and Recommendation [Doc. 41] on these motions, recommending that they be denied, and that the District Judge has accepted [Doc. 52] that Report and Recommendation in whole. The Government

---

[10]The maximum penalty for conspiracy to commit mail and wire fraud is twenty years. 18 U.S.C. §§ 1341, 1343, & 1349.

[11]The maximum penalty for conspiracy to commit money laundering is twenty years. 18 U.S.C. § 1956(a) & -(h).

22

argues that the District Judge's ruling on these issues is now the law of the case and that the Defendants have not shown any extraordinary circumstances warranting revisiting these issues.

Defendant Allen moves [Doc. 88] the Court to dismiss Counts Four through Ten. Defendant Thomas moves [Doc. 83] to dismiss Count 10. Both Defendants Allen and Thomas have filed nearly identical motions [Docs. 85 and 90] to Dismiss Count 10 in part. The instant motions to dismiss are identical to motions [Docs. 16, 18, and 20] filed with regard to the Superseding Indictment. In her legal memoranda in support of her current motions to dismiss, Defendant Allen notes that the instant motions are made "to renew the same argument[s] with respect to the [*Third*] *Superseding Indictment* for purposes of preservation of the issues." [Docs. 89 & 91, p.1, n.1] Defendant Allen further states that she "believes the Court is authorized to revisit the issue and reconsider its prior decision." [Id.] Defendant Thomas joins [Doc. 97] in this argument. At the April 4 motion hearing, counsel for Defendants Allen and Thomas made no additional argument with regard to these motions or the Court's reconsideration of them.

"Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." United States v. Todd, 920 F.2d 399, 403 (6th Cir. 1990) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). While the Court has the power to revisit an issue previously decided, doing so impedes judicial efficiency. Id. Accordingly, the Court "'should be loathe to [revisit settled issues] in the absence of extraordinary circumstances[.]'" Id. (quoting Christianson, 486 U.S. at 817).

In the instant case, the charging language in Counts Four through Ten of the Third

23

Superseding Indictment is substantively the same[12] as that alleged in the Superseding Indictment and challenged by the Defendants in their prior motions. Moreover, the Defendants raise no new arguments or advance no new case law in support of their contention that Counts Four through Ten fail to state an offense. Thus, the Court finds no reason, much less an extraordinary circumstance, to persuade it to reconsider its prior recommendations or the District Judge's ruling, which is now the law of the case. The Court recommends that Defendant Allen's and Thomas's motions to dismiss Counts Four through Ten [Docs. 83, 85, 88, and 90] be denied as moot.

_____

[12]Counts Four through Nine of the Third Superseding Indictment contain an additional factual paragraph alleging that

> "[o]n or about February 16, 2012, CANDLER delivered to ALLEN approximately $1.3 million in checks payable to BENCHMARK, representing such checks as constituting funds intended for investment with BENCHMARK. CANDLER instructed ALLEN to open a bank account in ALLEN's name only and deposit the checks into that account. Thereafter, on March 1, 2012, CANDLER committed suicide.

[Doc. 141, ¶34] Additionally, Counts 4 through 9 are set out in a chart in the Third Superseding Indictment, while the identical language appears in paragraph form in the Superseding Indictment.

24

# IV. CONCLUSION

The Court has considered the parties' briefs and arguments along with the relevant case law and finds no basis to dismiss the charges in the Third Superseding Indictment. Accordingly, the Court **RECOMMENDS** that the Defendants' motions to dismiss the charges [**Docs. 93 and 101**] be **DENIED** and that Defendant Allen's and Thomas's motions to dismiss Counts Four through Ten [**Docs. 83, 85, 88, and 90**] should be **DENIED as moot**.[13]

Respectfully submitted,


_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[13]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).